# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 9, 2015          Decided April 24, 2015

No. 11-1428

DELTA CONSTRUCTION COMPANY, INC., ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

———

Consolidated with 11-1441, 12-1427

———

On Petitions for Review of Final Agency Actions of the
Environmental Protection Agency and the Department of
Transportation

———

No. 13-1076

CALIFORNIA CONSTRUCTION TRUCKING ASSOCIATION, INC.,
ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

On Petition for Review of Final Agency Action of the United States Environmental Protection Agency

*Claude D. Convisser* argued the cause for petitioner Plant Oil Powered Diesel Fuel Systems, Inc. With him on the final joint opening brief were *Theodore Hadzi-Antich* and *M. Reed Hopper.*

*Claude D. Convisser* was on the final reply brief for petitioner Plant Oil Powered Diesel Fuel Systems, Inc.

*Theodore Hadzi-Antich* argued the cause for petitioners Delta Construction Company, Inc., et al., in case nos. 11-1428 and 13-1076. With him on the briefs was *M. Reed Hopper.*

*Michele L. Walter* and *Daniel R. Dertke,* Attorneys, U.S. Department of Justice, argued the causes for respondent. With them on the brief were *Sam Hirsch*, Acting Assistant Attorney General, *Stuart F. Delery*, Assistant Attorney General, *Mark B. Stern*, and *H. Thomas Bryon, III*, Attorneys, *Steven E. Silverman*, Attorney, U.S. Environmental Protection Agency, *O. Kevin Vincent*, Chief Counsel, National Highway Traffic Safety Administration, and *Timothy H. Goodman*, Acting Assistant Chief Counsel. *Eric G. Hostetler*, Attorney, U.S. Department of Justice, entered an appearance.

*Sean H. Donahue*, *Vickie Patton*, *Graham McCahan*, *Peter Zalzal*, and *Benjamin Longstreth* were on the brief for movant respondent-intervenors Environmental Defense Fund, et al., in support of respondents.

*Kamala D. Harris*, Attorney General, Office of the Attorney General for the State of California, *Robert W. Byrne*,

Senior Assistant Attorney General, *Annadel A. Almendras*, Supervising Deputy Attorney General, *M. Elaine Meckenstock*, Deputy Attorney General, *Thomas J. Miller*, Attorney General, Office of the Attorney General for the State of Iowa, *David R. Sheridan*, Assistant Attorney General, *Lisa Madigan*, Attorney General, Office of the Attorney General for the State of Illinois, *Matthew J. Dunn* and *Gerald T. Karr*, Assistant Attorneys General, *Eric T. Schneiderman*, Attorney General, Office of the Attorney General for the State of New York, *Barbara D. Underwood*, Solicitor General, *Michael J. Myers*, Assistant Attorney General, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Paul A. Garrahan*, Acting Attorney-in-Charge, *Douglas F. Gansler*, Attorney General at the time the brief was filed, Office of the Attorney General for the State of Maryland, *Roberta James*, Assistant Attorney General, *Martha Coakley*, Attorney General at the time the brief was filed, Office of the Attorney General for the Commonwealth of Massachusetts, *Carol Iancu*, Assistant Attorney General, *William H. Sorrell*, Attorney General, Office of the Attorney General for the State of Vermont, *Thea J. Schwartz*, Assistant Attorney General, *Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, *Leslie R. Seffern*, Assistant Attorney General, and *Michael A. Cardozo*, *Christopher Gene King*, and *Carrie Noteboom*, were on the brief for movant-intervenor States of California, et al.

Before: TATEL, *Circuit Judge*, EDWARDS, *Senior Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion filed for the Court PER CURIAM.

PER CURIAM: Acting pursuant to their respective statutory mandates, the Environmental Protection Agency ("EPA") and the National Highway Traffic Safety Administration

("NHTSA") issued coordinated rules governing the greenhouse gas emissions and fuel economy of cars and trucks. In *Coalition for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102 (D.C. Cir. 2012), *rev'd in part on other grounds sub nom. Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014), we upheld EPA's car emission standards. Now, a group of petitioners collaterally attacks these standards on procedural grounds, and an overlapping group challenges EPA's truck standards based on the same legal theory. Another petitioner challenges both agencies' regulations concerning trucks as arbitrary and capricious. As we explain below, however, we cannot reach the merits of any of these petitions.

**I.**

Section 202(a) of the Clean Air Act ("CAA") requires EPA to regulate air pollutants, including greenhouse gases, emitted "from any class or classes of new motor vehicles or new motor vehicle engines, which in [the EPA Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1); *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007) ("[G]reenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant.'"). EPA triggered this obligation in 2009 when it found that greenhouse gases "endanger both the public health and the public welfare of current and future generations" and that "emissions of these greenhouse gases from new motor vehicles and new motor vehicle engines contribute to the greenhouse gas air pollution that endangers public health and welfare." *See* Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, Final Rule, 74 Fed. Reg. 66,496 (Dec. 15, 2009) ("Endangerment Finding").

But "[b]ecause no available technologies reduce tailpipe [greenhouse gas] emissions per gallon of fuel combusted, any rule that limits tailpipe [greenhouse gas] emissions is effectively identical to a rule that limits fuel consumption." 76 Fed. Reg. 57,124–25. EPA's mandate therefore intersects with NHTSA's responsibility to promulgate average fuel efficiency standards for automobile manufacturers. 49 U.S.C. § 32902; 49 C.F.R. § 1.95. Given this, the two agencies worked together to generate functionally equivalent standards for greenhouse gas emissions and fuel economy. *See* Press Release, The White House, President Obama Announces National Fuel Efficiency Policy (May 19, 2009) (announcing cooperation between EPA and NHTSA); Presidential Memorandum, Improving Energy Security, American Competitiveness and Job Creation, and Environmental Protection Through a Transformation of our Nation's Fleet of Cars and Trucks (May 21, 2010) (directing EPA and NHTSA to work together on truck standards).

The first binding product of this collaboration was a joint Final Rule the agencies issued in 2010 for light-duty vehicles—or, translated from agency speak to English, cars. *See* Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards, Final Rule, 75 Fed. Reg. 25,324 (May 7, 2010) ("Car Rule"). While there are slight differences between the EPA greenhouse gas emission standards and the NHTSA fuel economy standards, *see id.* at 25,330 (explaining that only EPA's standard takes account of hydrofluorocarbon leakage from air-conditioning systems), "[t]hey represent a harmonized approach that will allow industry to build a single national fleet that will satisfy both" requirements, *id.*

Various state and industry groups challenged the Car Rule, along with the Endangerment Finding and related

regulations. This court upheld the rules against all challenges, *see Coalition for Responsible Regulation*, 684 F.3d 102, and the Supreme Court denied certiorari in the portion of the case challenging the Car Rule, *see Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2438 (2014).

Meanwhile, in 2011, EPA and NHTSA issued another joint Final Rule, this one regulating the greenhouse gas emissions and fuel economy of heavy-duty vehicles, i.e., trucks. *See* Greenhouse Gas Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles, Final Rule, 76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule"). As with the Car Rule, the agencies' standards differ slightly, *see id.* at 57,106 (explaining that "[c]ertain rules are exclusive to the EPA program" and that the EPA program phases in earlier), but again, "[c]ompliance by a truck manufacturer with the NHTSA fuel economy rule assures compliance with the EPA rule, and vice versa," *id.* at 57,125.

This case combines multiple challenges to the Truck Rule, as well as a collateral attack on the Car Rule. Two overlapping groups, which we shall refer to as the "California Petitioners," comprising businesses, associations, and individuals located in that state, bring related challenges: one to EPA's portion of the Car Rule and the other to its portion of the Truck Rule. These petitioners claim that, as purchasers of new vehicles, they are harmed by the increased up-front costs attributable to the greenhouse gas emission standards.

Another petitioner, Plant Oil Powered Diesel ("POP Diesel"), is a business that promotes the use of vegetable oil in place of traditional diesel fuel. It makes after-market modifications to diesel engines enabling them to run on vegetable oil, and hopes to bring a proprietary engine to

market. POP Diesel also imports and sells jatropha oil, a vegetable fuel squeezed from the fruit of a poisonous tree. Claiming that the Truck Rule makes its products economically infeasible, POP Diesel sought reconsideration of both the EPA and NHTSA components of that rule. EPA denied POP Diesel's petition for reconsideration, while NHTSA treated the filing as a petition for rulemaking, which it rejected. POP Diesel now appeals from the agencies' denials of its petition.

In order to obtain judicial review of these claims, however, the petitioners must establish that we have jurisdiction over their petitions. To do that, they must demonstrate that they have standing under Article III of the Constitution, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and that their petitions meet all other jurisdictional requirements, *see, e.g.*, 49 U.S.C. § 32909(b) (setting deadline for petitions for review). Even if petitioners can establish jurisdiction, we will not reach the merits of their claims unless they also seek to vindicate rights within "the zone of interests to be protected or regulated by the statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) (citation omitted).

This opinion proceeds in two parts. Part II considers the California Petitioners' Article III standing, while Part III examines whether this court has original jurisdiction over POP Diesel's claim against NHTSA, and whether its challenge to EPA's portion of the Truck Rule must be dismissed for lack of standing or because it does not fall within the zone of interests protected by the provision of the Clean Air Act governing emissions standards for motor vehicles.

8

## II.

The California Petitioners argue that "EPA neglected to comply with a nondiscretionary statutory duty," to provide its greenhouse gas emission standards to the Science Advisory Board—an expert body charged with providing scientific advice to EPA—prior to issuing them. Petitioners' Truck Rule Br. at 2; *see also* Petitioners' Car Rule Br. at 5 (same). Under the controlling statute, if EPA provides "any proposed criteria document, standard, limitation, or regulation under the Clean Air Act . . . to any other Federal agency for formal review and comment," it must "make available to the Board such proposed" document. 42 U.S.C. § 4365(c)(1). According to the California Petitioners, EPA triggered this provision by submitting its standards to the Office of Management and Budget pursuant to Executive Order 12866, but it failed to comply with the statutory requirement that it "make [the standard] available" to the Board.

According to EPA, however, the California Petitioners lack Article III standing because they have failed to show that "(1) [they] ha[ve] suffered (or [are] about to suffer) an injury-in-fact, that (2) was caused by the conduct of the respondent and (3) would be redressed by the relief sought from the court." *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 492 (D.C. Cir. 2004) (*citing Lujan*, 504 U.S. at 560–61 (1992)). Specifically, EPA argues, petitioners have failed to demonstrate an injury-in-fact because their allegations are too vague or otherwise deficient, and they have failed to demonstrate causation and redressability because even were we to grant their petitions, they would still face the same higher prices for vehicles.

We have no need to consider whether the California Petitioners have properly alleged an injury-in-fact because we

agree with EPA that they have shown neither causation nor redressability. Recall that EPA and NHTSA collaborated on both the Car Rule and the Truck Rule, and that, for both rules, the two agencies' requirements are substantially identical. *See supra* at 6 ("compliance by a truck manufacturer with the NHTSA fuel economy rule assures compliance with the EPA rule, and vice versa"); *supra* at 5 (the Car Rule "will allow industry to build a single national fleet that will satisfy both" requirements). Because the Science Advisory Board's statute applies only to EPA, however, the California Petitioners attack only EPA's portions of the two rules. But "both [agencies' standards], jointly, are the source of the benefits and costs of the National Program." Car Rule at 25,343. Therefore, even were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles. Accordingly, the California Petitioners cannot demonstrate either that EPA's standards cause their purported injury or that a favorable decision by this court would redress it. *See Massachusetts v. EPA*, 549 U.S. at 543 ("As is often the case, the questions of causation and redressability overlap."); *Branton v. FCC*, 993 F.2d 906, 910 (D.C. Cir. 1993) ("The two requirements tend to merge . . . in a case such as this where the requested relief consists solely of the reversal or discontinuation of the challenged action.").

Our decision in *Crete Carrier Corp. v. EPA* is instructive. There, certain trucking companies claimed they had standing to challenge a new EPA pollution standard because it increased the price of the truck engines they purchased. The engine manufacturers, however, were also subject to consent decrees that independently caused the same price hike. "Because of the Consent Decrees," we concluded, "the Trucking Companies have not established the necessary causal connection between the . . . Standard and the increased costs they will incur." *Crete Carrier Corp.*, 363 F.3d at 493.

Likewise here. Because a separate action—NHTSA's standards—independently causes the same alleged harm as the challenged action, the California Petitioners are unable to establish the "necessary causal connection" between the EPA standards and their purported injury.

True, the preambles to both the Car Rule and the Truck Rule identify slight differences between the two agencies' requirements, *see supra* at 5, 6, and it is theoretically possible that the EPA-specific portions cause a distinct injury that could be redressed by this court. But the California Petitioners make no such argument. Indeed, they argue neither that EPA's requirements independently cause a price increase nor that if EPA alone rescinded its standards vehicle manufacturers would sell cheaper products, and it is petitioners who bear the burden of establishing standing. *Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

What the California Petitioners do argue is that "the joint rule[s] create[] an indivisible 'National Program,'" meaning that "the fuel economy standards cannot be bifurcated from the greenhouse gas emission standards." Petitioners' Car Rule Reply Br. at 8; *see also* Petitioners' Truck Rule Reply Br. at 9 (same). But nothing in NHTSA's standards even suggests that they are dependent on EPA's standards—something government counsel confirmed at oral argument. *See* Truck Rule Oral Arg. Rec. at 36:20.

Finally, at oral argument California Petitioners' counsel cited *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and *Larson v. Valente*, 456 U.S. 228 (1982), for the idea that an injury is redressable for standing purposes so long as a favorable decision would remove one of its multiple regulatory causes,

even if the decision would fail to actually redress the injury. But far from expressing such an exotic quirk of redressability doctrine, these cases stand for the more pedestrian proposition that "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself" and "need not show that a favorable decision will relieve his *every* injury." *Larson*, 456 U.S. at 243 n.15. In both cases the plaintiffs challenged regulatory burdens that caused distinct harms. *See Village of Arlington Heights*, 429 U.S. at 261 (allegation of discriminatory zoning redressable even though non-profit developer "would still have to secure financing, qualify for federal subsidies, and carry through with construction" (footnote omitted)); *Larson*, 456 U.S. at 243 ("[A] declaration that [the statute's] fifty per cent rule is unconstitutional would put the State to the task of demonstrating that the [plaintiff] is not a religious organization within the meaning of the Act—and such a task is surely more burdensome than that of demonstrating that the [plaintiff's] proportion of nonmember contributions exceeds fifty per cent. Thus appellees will be given substantial and meaningful relief by a favorable decision of this Court."). By contrast, the California Petitioners have failed to identify a discrete injury that a favorable decision by this court would remedy. They therefore lack standing because "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

## III.

POP Diesel argues that the Truck Rule is arbitrary and capricious for three reasons. First, it complains that the Truck Rule measures the greenhouse gas emissions of fuels based on how much carbon dioxide is produced from vehicle tailpipes, ignoring greenhouse gas impacts created earlier in a fuel's

lifecycle. Petitioners' Truck Rule Br. 42–46; *see also id.* at 10–15. Second, it argues that it was unreasonable for EPA to conclude that the Truck Rule did not need additional incentives for biofuels because they are sufficiently promoted through the Renewable Fuel Standards Program, 42 U.S.C. § 7545(o). *Id.* at 47–48. Finally, POP Diesel argues that EPA failed to consider whether the Truck Rule's fuel efficiency improvements will lead to greater economic activity that causes a net increase in greenhouse gas emissions. *Id.* at 49–53. We consider, in turn, POP Diesel's challenges to the rules issued by NHTSA and EPA. With respect to each challenge, we conclude that the petitions for review must be dismissed.

## A.

This court lacks original jurisdiction over POP Diesel's claim against NHTSA. "Unless a statute provides otherwise, persons seeking review of agency action go first to district court rather than to a court of appeals." *International Brotherhood of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994). Petitions for review of agency action may not be pursued in the court of appeals in the first instance unless a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action.

POP Diesel argues that this court has original jurisdiction under 49 U.S.C. § 32909(a)(1), which permits any "person that may be adversely affected by a regulation prescribed in carrying out any of sections 32901–32904 or 32908 of this title"—i.e., NHTSA's fuel economy responsibilities—to "apply for review of the regulation by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit." Under NHTSA's regulations, however, a petition for reconsideration of a rule must be received within 45 days of the publication of the rule in the Federal Register.

49 C.F.R. § 553.35(a). Petitions received after that deadline are considered to be petitions for rulemaking under 49 C.F.R. § 552. *Id.* POP Diesel submitted its petition 59 days after the publication of the Truck Rule, so NHTSA treated it as a petition for a new rulemaking and denied it. 49 U.S.C. § 32909(a)(1) does not permit direct review of a petition for rulemaking in the courts of appeals.

The rationale supporting this court's decision in *Public Citizen, Inc. v. National Highway Traffic Safety Administration*, 489 F.3d 1279 (D.C. Cir. 2007), is controlling here. In *Public Citizen*, we examined the scope of 49 U.S.C. § 30161, which relates to NHTSA safety standards, and held that the statute did not authorize the court of appeals to entertain in the first instance challenges regarding petitions for rulemaking. *Id.* at 1287. Section 30161(a) authorizes direct appellate review of petitions filed by persons "adversely affected by an order prescribing a motor vehicle safety standard." The *Public Citizen* court observed that "to 'prescribe' is to order or adopt something as a governing rule." 489 F.3d at 1287 (citing 12 OXFORD ENGLISH DICTIONARY 390 (2d ed. 1989)). Setting a standard, the court explained, is "prescribing." *Id.* Declining to amend a standard, however, is not "prescribing." *Id.*

49 U.S.C. § 32909 is significantly the same as 49 U.S.C. § 30161 with respect to what petitions for review may be heard by the court of appeals in the first instance. Section 32909 says:

> (a) Filing and venue.—(1) A person that may be adversely affected by a regulation prescribed in carrying out any of sections 32901–32904 or 32908 of this title may apply for review of the regulation by filing a petition for review in the United States Court of Appeals for the

District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

(2) A person adversely affected by a regulation prescribed under section 32912(c)(1) of this title may apply for review of the regulation by filing a petition for review in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

This provision and the statutory provisions to which it refers relate only to generally applicable rules, standards, and procedures "prescribed" by the Secretary. *See, e.g.*, *id.* § 32901(c)(1) ("The Secretary shall prescribe by regulation the minimum driving range . . . ."); *id* § 32902(a) ("[T]he Secretary of Transportation shall prescribe by regulation average fuel economy standards . . . ."); *id.* § 32904(b)(3)(C) ("The Secretary of Transportation shall prescribe reasonable procedures for elections . . . ."). These provisions confirm what a straightforward reading of Section 32909 suggests: that NHTSA's denial of a petition for rulemaking is not the same as prescribing a regulation under the provisions enumerated in the direct review statute.

Because "the plain terms of the statute dictate that judicial review of NHTSA's denial of a petition for rulemaking must begin in district courts—not in courts of appeals," we must dismiss this portion of POP Diesel's suit. *Public Citizen*, 489 F.3d at 1287.

**B.**

This court has original jurisdiction over POP Diesel's challenge to EPA's portion of the Truck Rule under 42 U.S.C. § 7607(b)(1). However, EPA raises two other threshold objections to POP Diesel's petition for review. The agency first argues that POP Diesel lacks Article III standing because the company "fails to establish that it would sell more of its diesel engine conversion product or its fuel if the standards were amended." Respondents' Truck Rule Br. 26. We disagree.

The law of the circuit is clear that "any one competing for a governmental benefit . . . [may] assert competitor standing when the Government takes a step that benefits his rival and therefore injures him economically." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010). As an importer and seller of jatropha oil fuel, POP Diesel is injured by EPA regulations that incentivize other renewable fuels like electricity sold by its competitors.

We confronted a similar situation in *White Stallion Energy Center, LLC v. EPA*, 748 F.3d 1222, 1256 (D.C. Cir. 2014), *cert. granted on other grounds sub nom. Michigan v. EPA*, 135 S. Ct. 702 (2014). In that case, Julander, a natural gas supplier, challenged emissions standards promulgated under 42 U.S.C. § 7412 on the grounds that EPA should have required electric utilities to switch from coal to natural gas. *Id.* We held that the injury, causation, and redressability of Julander's standing were "self-evident, insofar as the Final Rule does not require [utilities] to switch to natural gas, to the detriment of Julander's stated interests, and on remand EPA could require fuel switching." *Id.* (citation omitted). The same logic applies here: the Truck Rule incentivizes other renewable fuels to the detriment of POP Diesel's interests. If

POP Diesel were to prevail on the merits, EPA could give redress by amending the regulation to incentivize vegetable oil fuel instead. In sum, POP Diesel has Article III standing.

EPA's second contention is that POP Diesel does not fall within the zone of interests protected by 42 U.S.C. § 7521, the provision of the Clean Air Act governing emissions standards for motor vehicles. Respondents' Truck Rule Br. 27–28. Here we agree, and this argument is fatal to POP Diesel's claim.

The purpose of the zone of interests inquiry is to determine whether POP Diesel "falls within the class of plaintiffs whom Congress has authorized to sue" under Section 7521. *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014). "In other words, we ask whether [POP Diesel] has a cause of action under the statute." *Id.* In suits under the Administrative Procedure Act, the zone of interests test is "not 'especially demanding.'" *Id.* at 1389 (quoting *Match-E-Be-Nash-She-Wish*, 132 S. Ct. at 2210). However, "the breadth of the zone of interests varies according to the provisions of law at issue." *Bennett v. Spear*, 520 U.S. 154, 163 (1997). "[W]hat comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the 'generous review provisions' of the APA may not do so for other purposes." *Id.* (quoting *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 400 n.16 (1987)).

In the context of emission standards, "an industry group's interest in increasing the regulatory burden on others falls outside the zone of interests protected by the Clean Air Act." *Association of Battery Recyclers v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (internal quotation marks omitted). This holds true even where corporations' "pecuniary interests in increasing demand for their products [are] aligned with the

goals of the CAA." *White Stallion*, 748 F.3d at 1257. As we have explained,

> Whenever Congress pursues some goal, it is inevitable that firms capable of advancing that goal may benefit. . . . But in the absence of either some explicit evidence of an intent to benefit such firms, or some reason to believe that such firms would be *unusually suitable champions* of Congress's ultimate goals, no one would suppose them to [be within the zone of interests] to attack regulatory laxity.

*Id.* (quoting *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283 (D.C. Cir. 1988)). "[J]udicial intervention may defeat statutory goals if it proceeds at the behest of interests that coincide only accidentally with those goals, and . . . open-ended emissions standards are particularly susceptible to such manipulation." *Id.* at 1257–58 (citation and internal quotation marks omitted).

As mentioned above, the facts of this case are particularly close to those of *White Stallion*, and the outcome of that case is controlling here. The *White Stallion* court held that Julander was outside the zone of interests protected by the statute because it sought to profit from increasing the regulatory burden on other parties. Just like Julander, POP Diesel is a purveyor of clean fuel challenging EPA's decision not to incentivize regulated entities to purchase its product. And as with Julander, the mere fact that POP Diesel's financial interests currently appear to align with the goals of the CAA is not sufficient to allow it to challenge EPA's emissions standards.

POP Diesel attempts to distinguish *White Stallion* by arguing that it (unlike Julander) is an "unusually suitable

champion" of the statute's purpose because of the "special suitability of its products for . . . reducing overall fossil fuel consumption and greenhouse gas emissions." POP Diesel's Reply Br. 13. However, we have repeatedly held that "green" corporate interests do not necessarily fall within the zone of interests of environmental statutes. In the context of the Resource Conservation and Recovery Act, this court refused to entertain a petition from the Environmental Technology Council (an association of hazardous waste treatment and disposal firms), challenging lax regulation of used and contaminated oil. *Hazardous Waste*, 861 F.2d at 282–85. We did so despite the fact that the Council's articles of incorporation declared that one of its purposes is "[t]o promote the protection of the environment." *Id.* at 281. The Council has also sued in this court under the CAA. *Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855, 870–71 (D.C. Cir. 2001). Representing firms with the "best performing" pollution control systems, the Council challenged EPA's creation of weaker alternate emissions standards that advantaged their competitors. *Id.* at 870. The court again held that the Council fell outside the zone of interests of the statute. *Id.* at 871.

*Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002), is the rare case in which we have permitted a competitor suit challenging EPA's emission regulations. However, it is the proverbial exception that proves the rule. Ethyl sought to require transparency in EPA's emissions test procedures. The company's interest was in information that would "help it develop and improve its products with an eye to conformity to emissions needs" and "secur[e] EPA approval for its own fuel additive products." *Id.* at 1147–48. Because Ethyl sought to improve its ability to comply with EPA fuel regulations, rather than to acquire business by increasing the burden of emissions regulations on other firms, its interests were

"congruent with those of the statute." *Id.* at 1148; *see also White Stallion*, 748 F.3d at 1258. Merely seeking to boost sales of a particularly green product, however, is not sufficient. POP Diesel is therefore not a proper petitioner and its claim must be dismissed.

## CONCLUSION

For the reasons set forth above, the petitions for review are dismissed.

*So ordered.*